**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| ALEXANDER WILLIAMS, JR., *Plaintiff*, v. DEPARTMENT OF JUSTICE, *et al.*, *Defendants*. | Case No. 1:23-cv-00401 (ACR) |

**MEMORANDUM OPINION**

Plaintiff Alexander Williams, Jr., proceeding *pro se*, sued Defendants the U.S. Department of Justice (DOJ) and the U.S. Marshals Service (USMS) under the Freedom of Information Act (FOIA), 5 U.S.C. § 552. Dkt. 1 (Compl.) ¶¶ 1–5. Before the Court are the parties' cross-motions for summary judgment. Dkts. 20, 22. For the reasons explained below, the Court **GRANTS** Defendants' Motion and **DENIES** Plaintiff's Cross-Motion.

## I. BACKGROUND

### A. Factual History

In October 2022, Plaintiff submitted a FOIA request to USMS seeking information about his underlying criminal case in New York. Compl. ¶ 12; Dkt. 1-1 at 14. Specifically, he requested:

> (1) The name of the Marshals from Columbia, SC, who assisted [New York Police Department (NYPD) Detectives] Steven Snieder and Thomas Handley in or around July – September 2018 [in] locat[ing] Mr. David Walker;

> (2) Any/all documentation signed by NYPD [Detectives] Steven Snieder and Thomas Handley when making the request for the USMS assistance when they traveled to Columbia, SC;
>
> (3) Any/all reports generated by the two USMS that assisted NYPD [Detectives] Steven Snieder and Thomas Handley during that travel to Columbia, SC, [and;]
>
> (4) Documentation as to where the USMS that [assisted] NYPD [Detectives] Steven Snieder and Thomas Handley ultimately met and spoke with David Walker indicating [if there were] any [audio] and video recordings made or records kept from their conversation[].

Dkt. 1-1 at 2 (cleaned up).[1]

In October 2022, USMS's FOIA Unit received Plaintiff's FOIA request and stated that it could neither confirm nor deny if it possessed records related to the referenced individuals. Dkt. 20-1 ¶ 13. It also stated it required an executed privacy waiver, known as Form DOJ-361, for Mr. Walker. *Id.*; Dkt. 20-2 at 5. The next month, Plaintiff submitted an executed Form DOJ-361 for Mr. Walker. Dkts. 20-1 ¶¶ 14–15; 20-2 at 12. Plaintiff's Complaint clarifies that he does not seek records specifically regarding Mr. Walker but "documentation, records, [and] log book entries that were generated when NYPD Detectives traveled to Columbia, SC, and applied for and [were] granted assistance from the U.S. Marshals Service in Columbia, SC." Compl. ¶ 12 (cleaned up).

Plaintiff then followed up with USMS's FOIA Unit in November 2022, *see id.* ¶ 13; Dkt. 1-1 at 16–17, but before receiving a response, he filed an administrative appeal to the Office of Information Policy (OIP) in early December 2022, *see* Compl. ¶¶ 14–15; Dkt. 20-1 ¶ 16; Dkt. 1-1 at 19–20. Also in December 2022, Plaintiff narrowed his request to "logbook entries from the

[1] All pin citations in this Memorandum Opinion refer to the document's ECF-stamped page number.

USMS office in Columbia, SC, in regards to the entries made when these two NYPD detectives were granted assistance from the Marshals Service in Columbia, South Carolina." Compl. ¶ 16 (cleaned up); Dkt. 1-1 at 22–23. OIP then closed Plaintiff's appeal because USMS had yet to render a final determination. *See* Dkts. 20-1 ¶ 16; 20-2 at 14–15.

Later in December 2022, USMS issued a "*Glomar* response,"[2] again indicating that it could neither confirm nor deny that it possessed records pertaining to USMS and NYPD personnel because such an acknowledgment would constitute a clearly unwarranted invasion of personal privacy pursuant to 5 U.S.C. §§ 552(b)(6) (FOIA Exemption 6) and 552(b)(7)(C) (FOIA Exemption 7(C)). *See* Dkt. 20-1 ¶ 17; Dkt. 20-2 at 17–18. Plaintiff then appealed that determination, and in April 2023, OIP affirmed USMS's decision. *See* Dkt. 20-1 ¶ 17; Dkt. 20-2 at 21–22.

**B. Procedural History**

In February 2023, Plaintiff sued USMS and DOJ demanding the release of the records sought in his FOIA request and subsequent related letters. Compl. at 6. After USMS learned of this lawsuit, it maintained its *Glomar* response to Part (1) of Plaintiff's FOIA request, Dkt. 20-1 ¶ 26, but conducted searches for Parts (2), (3), and (4) of the request, *id*. ¶ 19. Following these searches, USMS did not find any responsive records. *Id.* ¶¶ 23, 25.

In June 2023, Defendants answered the Complaint. Dkt. 13. Defendants completed their review of Plaintiff's FOIA request the next month, Dkt. 14, and then moved for summary

[2] "The *Glomar* response takes its name from the CIA's refusal to confirm or deny the existence of records about the *Hughes Glomar Explorer,* a ship used in a classified CIA project to raise a sunken Soviet submarine from the floor of the Pacific Ocean to recover the missiles, codes, and communications equipment onboard for analysis by United States military and intelligence experts." *PETA v. Nat'l Insts. of Health, Dep't of Health & Hum. Servs.*, 745 F.3d 535, 540 (D.C. Cir. 2014) (cleaned up).

judgment in September 2023, Dkt. 20. Also in September 2023, Plaintiff filed his Cross-Motion, combined with what appeared to be his Opposition to the Motion for Summary Judgment. Dkts. 21–22.

To ensure that Plaintiff had every opportunity to address Defendants' arguments, the Court modified the briefing schedule and provided Plaintiff with a long extension to file any supplemental opposition or cross-motion by January 2024. Minute Order of Sept. 13, 2024. The Court also entered an order advising Plaintiff of his obligation to respond to Defendants' Motion for Summary Judgment. Dkt. 23 at 3 (citing *Neal v. Kelly*, 963 F.2d 453, 457–58 (D.C. Cir. 1992)). Despite this clear notice and additional time, Plaintiff did not submit any further briefing as to either Defendants' Motion for Summary Judgment or in support of his own Cross-Motion.

## II. LEGAL STANDARD

In a FOIA case, a district court reviews the agency's decisions *de novo*, *Schoenman v. FBI*, 604 F. Supp. 2d 174, 186 (D.D.C. 2009), and "the burden is on the agency to sustain its action," 5 U.S.C. § 552(a)(4)(B). "[T]he vast majority of FOIA cases can be resolved on summary judgment . . . ." *Brayton v. Off. of the U.S. Trade Rep.*, 641 F.3d 521, 527 (D.C. Cir. 2011). Under Federal Rule of Civil Procedure 56, "[a] party is entitled to summary judgment only if there is no genuine issue of material fact and judgment in the movant's favor is proper as a matter of law." *Soundboard Ass'n v. FTC*, 888 F.3d 1261, 1267 (D.C. Cir. 2018) (cleaned up); *see* Fed. R. Civ. P. 56(a). "[S]ummary judgment may be granted on the basis of agency affidavits if they contain reasonable specificity of detail rather than merely conclusory statements, and if they are not called into question by contradictory evidence in the record or by evidence of agency bad faith." *Aguiar v. DEA*, 865 F.3d 730, 734–35 (D.C. Cir. 2017) (cleaned up).

"[T]o satisfy [the] FOIA's aims of providing more transparency into the workings of the government," an agency must show that it made an adequate search for records responsive to a FOIA request. *Montgomery v. IRS*, 40 F.4th 702, 714 (D.C. Cir. 2022). This demonstration "entails a showing that the agency made a good faith effort to conduct a search for the requested records, using methods which can be reasonably expected to produce the information requested." *Id*. (cleaned up). "While the agency need not search every record system, it also may not limit its search to only one record system if there are others that are likely to turn up the information requested." *Id*. (cleaned up). Moreover, "the adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search." *Iturralde v. Comptroller of the Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003).

In short, summary judgment is inappropriate only "if a review of the record raises substantial doubt as to the search's adequacy, particularly in view of well defined requests and positive indications of overlooked materials." *Shapiro v. U.S. Dep't of Just.,* 40 F.4th 609, 613 (D.C. Cir. 2022) (cleaned up), *cert. denied*, 143 S. Ct. 526 (2022). In assessing an agency's fulfillment of its FOIA obligations, an agency's declarations are given "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." *Id.* (cleaned up).

## III. DISCUSSION

### A. *Glomar* Response (as to Part 1 of Plaintiff's FOIA Request)

Upon receipt of a FOIA request, an agency may provide what is known as a *Glomar* response—*i.e.*, the agency may refuse to confirm or deny the existence of records responsive to the FOIA request because acknowledging the existence of responsive records would "cause harm cognizable under an FOIA exemption." *Gardels v. CIA*, 689 F.2d 1100, 1103 (D.C. Cir. 1982).

"A *Glomar* response is valid if the fact of the existence or nonexistence of agency records falls within a FOIA exemption." *PETA v. Nat'l Insts. of Health, Dep't of Health & Hum. Servs.*, 745 F.3d 535, 540 (D.C. Cir. 2014) (cleaned up). If a *Glomar* response is justified, an agency "need not conduct any search for responsive documents or perform any analysis to identify segregable portions of such documents." *Lindsey v. FBI*, 271 F. Supp. 3d 1, 4 (D.D.C. 2017) (cleaned up). "In determining whether the existence of agency records *vel non* fits a FOIA exemption, courts apply the general exemption review standards established in non-*Glomar* cases." *Wolf v. CIA*, 473 F.3d 370, 374 (D.C. Cir. 2007). "Courts can grant summary judgment upholding a *Glomar* response based on agency affidavits explaining the basis for the response." *PETA*, 745 F.3d at 540. "Affidavits must contain reasonable specificity of detail rather than merely conclusory statements and cannot be called into question by contradictory evidence in the record." *Id.* (cleaned up).

USMS issued a *Glomar* response as to Part (1) of Plaintiff's FOIA request, Dkt. 20-1 ¶¶ 27–33, which sought the names and identifying information of U.S. Marshals in Columbia, South Carolina, who allegedly coordinated with NYPD Officers Snieder and Handley around July to September 2018 in locating Mr. Walker, Dkt. 1-1 at 2. USMS justifies its *Glomar* response under Exemptions 6 and 7(C). Dkt. 20-1 ¶¶ 27–33.

Exemption 6 protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) protects "records or information compiled for law enforcement purposes, but only to the extent that the production of such law enforcement records or information . . . could reasonably be expected to constitute an unwarranted invasion of personal privacy." *Id.* § 552(b)(7)(C). Because "[e]xemption 7(C)'s privacy language is broader than the

comparable language in Exemption 6," *U.S. Dep't of Just. v. Reps. Comm. for Freedom of the Press*, 489 U.S. 749, 756 (1989), the Court confines its analysis to Exemption 7(C), *PETA*, 745 F.3d at 541.

Exemption 7(C) applies if the agency meets a two-part test. *First*, to invoke *any* subsection of § 552(b)(7), the agency must first satisfy a threshold requirement that the "records or information" are "compiled for law enforcement purposes." 5 U.S.C. § 552(b)(7); *see FBI v. Abramson*, 456 U.S. 615, 622 (1982). The "focus is on how and under what circumstances the requested files were compiled, and whether the files sought relate to anything that can fairly be characterized as an enforcement proceeding." *Jefferson v. Dep't of Just., Off. of Prof. Resp.*, 284 F. 3d 172, 176–77 (D.C. Cir. 2002) (cleaned up).

*Second*, an agency must show that "acknowledgment of responsive documents 'could reasonably be expected to constitute an unwarranted invasion of personal privacy.'" *PETA*, 745 F.3d at 540–41 (quoting 5 U.S.C. § 552(b)(7)(C)). "To answer that question," a court must "weigh the public interest in the release of information against the privacy interest in nondisclosure." *Id*. at 541 (cleaned up).

A plaintiff challenging a *Glomar* response based on "[a]llegations of government misconduct" must provide a "meaningful evidentiary showing" because such allegations "are easy to allege and hard to disprove." *Nat'l Archives and Recs. Admin. v. Favish*, 541 U.S. 157, 175 (2004) (cleaned up). A plaintiff must submit "compelling evidence that the agency denying the FOIA request is engaged in illegal activity" and that access to third-party names and information "appearing in the agency's law enforcement files is necessary in order to confirm or refute that evidence." *SafeCard Servs. v. SEC*, 926 F.2d 1197, 1205–06 (D.C. Cir. 1991). "Only when the FOIA requester has produced evidence sufficient to satisfy this standard will there exist

a counterweight on the FOIA scale for the court to balance against the cognizable privacy interests in the requested records." *Favish*, 541 U.S. at 174–75. Without sufficient evidence, "there is no reason to believe that the incremental public interest in such information would ever be significant," and the information is exempt from disclosure under Exemption 7(C). *SafeCard Servs*., 926 F.2d at 1206.

*1. USMS Compiled the Records for Law Enforcement Purposes*

USMS is a law enforcement agency within DOJ. *See* Dkt. 20-1 ¶ 28 (citing 28 U.S.C. § 566; 18 U.S.C. § 4086; 34 U.S.C. § 41503; 28 C.F.R. § 0.111; Fed. R. Crim. P. 4). In her sworn declaration, Kathleene Molen, an Associate General Counsel at USMS, stated, based on personal knowledge, that the responsive records withheld under Exemption 7 were compiled for law enforcement purposes. *See* Dkt. 20-1 ¶¶ 29, 32–33. And "it is especially convincing" that the requested information was compiled for law enforcement purposes "in this case because [Plaintiff] explicitly sought records related to his own criminal prosecution." *Blackwell v. FBI*, 646 F.3d 37, 40 (D.C. Cir. 2011); *see also Roberts v. FBI*, 845 F. Supp. 2d 96, 103 (D.D.C. 2012); Compl. ¶¶ 12, 16, 26; Dkt. 1-1 at 14. Thus, the Court concludes that USMS met its threshold burden to establish that any responsive records were compiled for law enforcement purposes. The Court now analyzes the applicability of Exemption 7(C) to USMS's *Glomar* response.

*2. USMS Has Justified Its* Glomar *Response Under Exemption 7(C)*

The Court finds that USMS has justified its *Glomar* response under Exemption 7(C). USMS invoked the exemption to protect the identities of federal and local law enforcement officers within any responsive investigatory records that may exist. Dkt. 20-1 ¶¶ 27–33. Ms. Molen states that acknowledgment of the requested information "could trigger hostility toward

USMS personnel" by inciting "[i]ndividuals targeted by investigations and related proceedings." *Id.* ¶ 33. Such individuals "could seek to harass or threaten USMS personnel based on the USMS's employee['s] participation in an investigation," and the same is true "for law enforcement officers from partnering law enforcement agencies." *Id.* ¶¶ 32–33. Further, acknowledging the existence of the requested information could "disrupt and impede official agency activity," hampering USMS's ability to conduct its responsibilities. *Id.* ¶ 32. Without a "countervailing public interest in disclosure," USMS's *Glomar* response—invoked to shield personal identifying information of law enforcement agents—is "appropriate under Exemption 7(C)." *Roth v. Dep't of Just.*, 642 F.3d 1161, 1179 (D.C. Cir. 2011).

Plaintiff argues he is entitled to the requested information because USMS and NYPD engaged in misconduct during his criminal case. *See* Compl. ¶¶ 12, 16, 26; Dkt. 1-1 at 14. Plaintiff alleges that USMS oversaw an unlawful criminal investigation in Columbia, South Carolina. Compl. ¶ 26. Specifically, he alleges that the named NYPD officers "applied for" and were "granted assistance" by USMS "under false pretense[s]," and that USMS covertly organized the officers' travel from New York to South Carolina so they could assist with USMS's investigation there without obtaining the proper authorization from NYPD. *Id.* ¶¶ 12, 26.

Plaintiff fails to establish a countervailing public interest justifying disclosure. "Exemption 7(C) takes particular note of the strong interest of individuals, whether they be suspects, witnesses, or investigators, in not being associated unwarrantedly with alleged criminal activity." *Dunkelberger v. Dep't of Justice*, 906 F.2d 779, 781 (D.C. Cir. 1990) (cleaned up). And Plaintiff's broad allegations do not explain how public disclosure here would "ensure that

the *Government's* activities be opened to the sharp eye of public scrutiny." *Reps. Comm.*, 489 U.S. at 774 (cleaned up).

Plaintiff has not submitted any countervailing evidence and instead relies on "allegedly suspicious circumstances [that] lack[] any substantiation," which does "not come close to meeting the demanding *Favish* standard for challenging the [Government's] invocation of FOIA Exemption 7(C)." *Blackwell*, 646 F.3d at 41 (cleaned up). Plaintiff points to a letter from New York City's Subpoena Litigation Unit, apparently released during discovery in his criminal case, indicating that NYPD found no "reports, records, receipts, or authorizations for travel on the case involving Alexander Williams." Dkt. 1-1 at 14. But Plaintiff provides no context or explanation for the significance of that letter. Nor is it otherwise indicative of "wrongdoing *on the* [*federal*] *government's part*[,]" *Hand v. U.S. Dep't of Just.*, No. 20-cv-3690, 2023 WL 2707878, at *5–6 (D.D.C. Mar. 29, 2023) (affirming DOJ's use of a *Glomar* response under Exemption 7(C) where the plaintiff sought records related to DOJ employees and agency contacts, and finding that a purportedly threatening letter from a former federal agent did not constitute "evidence—let alone compelling evidence—that anyone at DOJ acted improperly"), *aff'd*, No. 23-5080, 2023 WL 9008705 (D.C. Cir. Dec. 28, 2023) (per curiam); *see Sonds v. Huff*, 391 F. Supp. 2d 152, 157–59 (D.D.C. 2005), *aff'd*, No. 05-5428, 2006 WL 3093808 (D.C. Cir. June 22, 2006) (per curiam); *Manchester v. FBI*, No. 96-0137, 2005 WL 3275802, at *7 (D.D.C. Aug. 9, 2005).

Moreover, disclosure of the third-party information requested by Plaintiff is especially disfavored "when the requester asserts a public interest—however it might be styled—in obtaining information that relates to a criminal prosecution." *Blackwell*, 646 F.3d at 41. The FOIA is "not a substitute for discovery rules which govern civil and criminal litigation where different considerations are at issue." *Clay v. U.S. Dep't of Justice*, 680 F. Supp. 2d 239, 248

(D.D.C. 2010) (cleaned up). Unlike a "constitutionally compelled disclosure to a single party" during discovery in criminal litigation, *Cottone v. Reno*, 193 F.3d 550, 556 (D.C. Cir. 1999), a FOIA disclosure is released "to the public at large," *Clay*, 680 F. Supp. 2d at 248. Plaintiff's "personal interest in seeking documents that should have been produced and made available to him at his criminal trial . . . does not suffice." *Petrucelli v. Dep't of Just.*, 51 F. Supp. 3d 142, 166 (D.D.C. 2014) (cleaned up); *Engelking v. DEA*, 119 F.3d 980, 980–81 (D.C. Cir. 1997) (per curiam); *Lazaridis v. U.S. Dep't of Just.*, 766 F. Supp. 2d 134, 145 (D.D.C. 2011); *Brown v. U.S. Dep't of Just.*, 742 F. Supp. 2d 126, 133 (D.D.C. 2010).

Without more, Plaintiff has asserted "a generic public interest in the administration of justice," which cannot overcome the privacy interest of the third parties. *Petrucelli*, 51 F. Supp. 3d at 166 (cleaned up). "A mere desire to review how an agency is doing its job, coupled with allegations that it is not, does not create a public interest sufficient to override the privacy interests protected by Exemption 7(C)." *McCutchen v. Dep't of Health & Hum. Servs.*, 30 F.3d 183, 188. Even if Plaintiff had submitted compelling evidence of wrongdoing, based on the representations in Ms. Molen's declaration, any public interest that may exist would be "outweighed here" by the privacy interests of the third parties involved. *Lindsey v. FBI*, 490 F.

Supp. 3d 1, 18–19 (D.D.C. 2020) (FBI's *Glomar* response was justified where the plaintiff "barely touche[d] on the public interest" in disclosure).[3]

* * *

For the reasons stated above, the Court finds that USMS has justified its *Glomar* response under Exemption 7(C) in response to Part (1) of Plaintiff's FOIA request, thus satisfying its FOIA obligations.

**B. Adequacy of the Search (Parts (2)–(4) of the FOIA Request)**

USMS bears the initial burden of showing that its searches were adequate. *Prop. of the People, Inc. v. U.S. Dep't of Just.*, 530 F. Supp. 3d 57, 61 (D.D.C. 2021). The adequacy of an agency's search is measured by a "standard of reasonableness" under the attendant circumstances. *Truitt v. U.S. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990) (cleaned up). "To demonstrate that it has conducted an adequate search, the agency may submit affidavits or declarations that explain in reasonable detail the scope and method of its search, and in the absence of contrary evidence, such affidavits or declarations are sufficient to demonstrate an agency's compliance with the FOIA." *Ahuruonye v. U.S. Dep't of the Interior*, 239 F. Supp. 3d 136, 141 (D.D.C. 2017) (cleaned up). "Once an agency has made a *prima facie* showing of adequacy, the burden shifts to the plaintiff to provide countervailing evidence as to the adequacy

[3] Plaintiff also argues that he is entitled to the disclosure of the responsive records sought in Part (1) of his FOIA request because he complied with his obligations by submitting a Form DOJ-361 for Mr. Walker. Dkt. 21-1 at 1–3. But this argument falls short for two reasons. *First*, Plaintiff has conceded he does not actually seek records related to Mr. Walker. See Compl. ¶ 12. *Second*, USMS did not assert its *Glomar* response to protect Mr. Walker; it did so to protect the identities and associated information for USMS agents and NYPD officers, *see* Dkt. 20-1 ¶¶ 27–33, which is appropriate under Exemption 7(C), *see, e.g.*, *Lewis v. U.S. Dep't of Just.*, 733 F. Supp. 2d 97, 112–13 (D.D.C. Aug. 19, 2020); *Black v. Dep't of Just.*, 69 F. Supp. 3d 26, 40–41 (D.D.C. 2014); *Fischer v. U.S. Dep't of Just.*, 596 F. Supp. 2d 34, 47–48 (D.D.C. 2009); *Schubert v. FBI*, No. 22-3658, 2024 WL 341173, at *6–7 (D.D.C. Jan. 29, 2024).

of the agency's search." *Schoenman v. FBI*, 764 F. Supp. 2d 40, 46 (D.D.C. 2011) (cleaned up). Such evidence must "raise 'substantial doubt' concerning the adequacy of the agency's search." *Id.* (quoting *Iturralde*, 315 F.3d at 314).

*1. USMS Has Met Its Initial Burden to Show the Searches Were Adequate*

Although the searches that USMS conducted in response to Parts (2), (3), and (4) of Plaintiff's FOIA request did not yield any responsive records, *see* Dkt. 20-1 ¶¶ 19–25, the Court holds that they were adequate and reasonable under the attendant circumstances. As discussed above, USMS submitted a declaration from Ms. Molen, who has experience and personal knowledge regarding (1) the types of documents that USMS maintains, (2) USMS's FOIA policies and procedures, and (3) Plaintiff's FOIA request. *See id.* ¶¶ 1, 3, 33. Ms. Molen states that, upon receipt and review of the FOIA request, USMS's FOIA Office "determined that the District of South Carolina was the most likely to maintain records responsive to Mr. Williams' request." *Id.* ¶¶ 6, 19. She asserts that it is common for USMS's primary FOIA Unit to refer and "coordinate and/or conduct document searches" with FOIA liaisons from other USMS divisions and districts who "are knowledgeable about the records and files maintained by their particular office." *Id.* ¶¶ 6–8. Those liaisons are also familiar with the subject matter (should it exist), and then coordinate with their own local personnel. *Id.* After such a referral, a local liaison will coordinate with their own "District Office, and/or Headquarters division[;]" direct and conduct searches; and, if records are found, the liaison will then transmit them to the primary FOIA Unit for final review "to ensure the records are, in fact, responsive to the FOIA request and [to] assert any appropriate FOIA exemptions." *Id.* ¶ 8.

Here, after referral to USMS's District of South Carolina, the liaison and personnel there conducted searches within two databases, the "Justice Detainee Information System" (JDIS), and

"Capture." *Id.* ¶¶ 21–23, 25. Ms. Molen explains that "JDIS was designed to serve the needs of USMS criminal investigators, administrative analysts, and supervisory personnel," affording "each of the USMS's divisions with the information management tools to help apprehend fugitives, track and manage the custody and transportation of prisoners, conduct authorized criminal investigations, and protect the federal judicial process." *Id.* ¶ 21. JDIS contains various categories of information, including, "identifying data, incident reports, information identifiable to informants, protected witnesses, confidential sources, and contact information for law enforcement personnel." *Id*. Ms. Molen also explains that, starting in 2016, "USMS has been migrating multiple legacy systems, including JDIS, to the enhanced Capture system," which serves as a "single, integrated system [that] provides a comprehensive view of USMS data centered around Prisoner Management, Security Management and Investigations." *Id.* ¶ 22.

The District of South Carolina first searched both JDIS and Capture for "records responsive to Mr. Walker, the individual for whom Mr. Williams provided a signed DOJ-361 Form," by inputting "the identifiers provided on the signed DOJ-361 Form, namely [Mr. Walker's] date of birth and social security number." *Id.* ¶ 20. No responsive records were retrieved. *See id*. ¶ 23.

Next, Ms. Molen spoke directly with the District of South Carolina liaison regarding the circumstances, if any, that would warrant their division to coordinate with NYPD. *See id.* ¶¶ 3, 24. The liaison stated that their division "would not assist the NYPD on a case unless it had been asked, through a collateral lead request from one of the USMS's New York district offices, to do so." *Id*. ¶ 24. Accordingly, the "District of South Carolina searched in both JDIS and Capture for all of its incoming collateral lead requests from July 1, 2018, through September 30, 2018, (the timeframe provided by Mr. Williams[,]" and it "located 91 collateral lead requests."

*Id.* ¶ 25. Ms. Molen states that "four of these collateral lead requests involved the NYPD[,]" but after review, none of those lead requests involved any of "the individuals named in Mr. Williams's request," and therefore, no records were found responsive. *Id.*

Given this information, the Court concludes that Ms. Molen's declaration sets forth in reasonable detail, and in good faith, the type of information that USMS retains, how that information is organized, the divisions and databases that were searched in responding to Plaintiff's FOIA request, the scope of the searches, and the specific search terms used. *See id.* ¶¶ 1, 3–10, 19–25. Her declaration specifically describes why particular divisions, databases, and search terms were used and explains why no responsive records were found. *See id*. ¶¶ 6–10, 19–25. Thus, the Court finds that USMS has shown "in reasonable detail the scope and method of its search . . . to demonstrate [the] agency's compliance with the FOIA," *Ahuruonye*, 239 F. Supp. 3d at 141 (cleaned up), and that those searches were reasonable under the circumstances, *see White v. Dep't of Just.*, 840 F. Supp. 2d 83, 88 (D.D.C. 2012), *aff'd*, No. 12-5067, 2012 WL 3059571 (D.C. Cir. July 19, 2012) (per curiam).

### 2. *Plaintiff Has Not Challenged the Adequacy of USMS's Searches*

USMS has met its prima facie showing of adequacy, and Plaintiff has not presented any argument, let alone "countervailing evidence" to raise "substantial doubt" about the adequacy of USMS's searches. *Schoenman*, 764 F. Supp. 2d at 46 (quoting *Iturralde*, 315 F.3d at 314). Plaintiff's bare allegations that USMS possesses the information sought, and that he is entitled to that information, *see* Compl. ¶¶ 1–2; Dkt. 21 at 1, cannot overcome the presumption of good faith given to USMS's declaration. "[I]t is well settled that conclusory allegations unsupported by factual data will not create a triable issue of fact." *Broaddrick v. Exec. Off. of the President*,

139 F. Supp. 2d 55, 65 (D.D.C. 2001) (cleaned up), *aff'd*, 38 F. App'x 20 (D.C. Cir. 2002) (per curiam).

As noted above, "whether a search is adequate is determined by methods, not results" and "[a]n agency's failure to locate . . . specific responsive document[s] will not, on its own, render an otherwise reasonable search inadequate." *Nance v. FBI*, 845 F. Supp. 2d 197, 201 (D.D.C. 2012) (cleaned up). Plaintiff's mere speculation that material exists does not undermine the reasonableness of USMS's search. *See Meeropol v. Meese*, 790 F.2d 942, 956 (D.C. Cir. 1986).

* * *

Therefore, given the evidence submitted by USMS, and the lack of countervailing evidence from Plaintiff, the Court finds that USMS has met its obligations under the FOIA as to Parts (2), (3), and (4) of Plaintiff's FOIA request. *See Truitt*, 897 F.2d at 542.

## IV. CONCLUSION

For these reasons, the Court **GRANTS** Defendants' Motion for Summary Judgment, Dkt. 20, and **DENIES** Plaintiff's Cross-Motion for Summary Judgment, Dkt. 22. The Court has entered a separate Order consistent with this Memorandum Opinion.

Date: June 6, 2024

ANA C. REYES
United States District Judge